Pamela Bouvier, et al. v. David Wilson, Commissioner of Social Welfare

[431 A.2d 465]

No. 72-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed April 21, 1981

*David Watts* and *Gretchen S. Bailey,* Vermont Legal Aid, Inc., Burlington, for Plaintiffs.

*M. Jerome Diamond,* Attorney General, Montpelier, and *Michael O. McShane,* Assistant Attorney General, Waterbury, for Defendant.

**Barney, C.J.** The Department of Social Welfare issued a regulation, W.A.M. § 2613.2, restricting the duration of unlimited temporary housing payments under the General Assistance program to twenty-eight days in any six-month period. The level of assistance would then drop to the level of the permanent housing allotment for the area. An action was brought on behalf of six plaintiffs challenging the regulation as unauthorized under the provisions of the Vermont statutes relating to welfare and general assistance (33 V.S.A. chs. 26 and 38), as well as violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. The plaintiffs sought to have the action stand as a class action under V.R.C.P. 23, but since the trial court did not so order it as provided in V.R.C.P. 23(c)(1), it remains a suit maintained by the plaintiffs on their own behalf.

The lower court made findings and adjudged the regulation invalid as inconsistent with the statutory purposes of 33 V.S.A. § 2501(1), which states the goal to be to "provide assistance and benefits to persons . . . in proven need thereof and eligible for such assistance . . . ." The disposition did not dispute the right of the Department to exercise its authority to maximize the effect of the money appropriated for the General Assistance program, but it did find that the regulation in question, W.A.M. § 2613.2, went beyond the reasonable bounds of the Department's authority and struck it down. The court found it unnecessary to reach any constitutional issues.

There is no significant factual dispute in this case. The General Assistance program is wholly state funded, but has not been adequately financed by the Legislature over the past several years. The Department is concerned because a new

program designed to meet emergency fuel needs has now been added to the underfunded General Assistance program.

33 V.S.A. § 2554 provides:

> Should the funds available for assistance be insufficient to provide assistance to all those eligible, the amounts of assistance granted in any program or portion thereof shall be reduced equitably, in the discretion of the commissioner by regulation.

Under that authority the regulation in question, W.A.M. § 2613.2, was promulgated. The temporary shelter program has been an expensive one, of uneven application. This is because not all recipients can find permanent lodgings, particularly in Chittenden County, and because temporary shelter has been two to four times the cost level of the maximum allowed for permanent housing. Many recipients are living, and some have lived for some time, in hotels or motels. Until W.A.M. § 2613.2 there was no duration limit on the amount of temporary housing assistance a recipient could be given.

After a year's study, the Department determined that approximately 21% of the people receiving temporary housing assistance were unable to locate alternatives to temporary housing within 28 days or less. Under the regulation, they would go onto the permanent housing allowance which would be insufficient to keep them housed as they were, and would result, very probably, in eviction. Although not reflected in the findings, the evidence pointed out by the plaintiffs demonstrates the nature of the Department's concern. In the year of study, 542 people in Chittenden County received temporary housing assistance at a cost of $157,164.35. $68,142.76, or 43%, of this was paid out in benefits for people in temporary housing for twenty-eight days or more. This, the Department claims, indicates that a small number of recipients are consuming a disproportionate amount of that welfare money, justifying the regulation ultimately decided upon.

■■ The basic inquiry is whether the regulation is in harmony with the statutory scheme, uniform in operation and equal in effect so as to be a valid exercise of regulatory authority. *Hatin* v. *Philbrook*, 134 Vt. 456, 459, 365 A.2d 511, 513 (1976). If it conforms to that test, the fact that the regu-

latory solution is not the one this Court would have selected or preferred is of no moment. Welfare benefits are awards created entirely by statutory authority, and therefore any regulatory exercises must likewise be consistent with the enacted law.

The plaintiffs argue that it is not their position that the imposition of a complete bar to temporary housing assistance after twenty-eight days when permanent housing assistance is available is invalid per se. The claim is that, given the present housing conditions in Vermont, the challenged regulation will result in large numbers of people being without shelter, and therefore the new provision does not meet the requirements of the Welfare Code. At the time this action was brought these plaintiffs, all from Chittenden County, had all received temporary shelter assistance for periods ranging from four to twenty months at the time of the hearing, and all had been unsuccessful in finding permanent housing.

The social welfare policy of the state is given in 33 V.S.A. § 2501:

It is the policy of the state of Vermont that:

(1) Its social welfare programs shall provide assistance and benefits to persons of the state in proven need thereof and eligible for such assistance and benefits under the provisions of this title; . . . .

Aid is defined in 33 V.S.A. § 2502(a)(1) as "financial assistance."

General assistance is defined by 33 V.S.A. § 3001(4) as: "financial aid to provide the necessities of life including food, clothing, shelter, fuel, electricity, medical care and other items as the commissioner may prescribe by regulation when a need is found to exist and the applicant is otherwise found eligible."

33 V.S.A. § 3004(a), dealing with eligibility, opens with the following statement: "Consistent with available appropriations, the department of social welfare shall furnish general assistance under this chapter, except as provided below, to any otherwise eligible individual unable to provide the necessities of life for himself and for those whom he is legally obligated to support."

Taking all of these statutory directions together, it is established that the Department has a duty to furnish monetary

assistance to eligible persons in need, and if the appropriated funds are insufficient to provide full assistance, the amounts granted are to be reduced equitably. The law calls for this equitable reduction to be accomplished through the exercise of discretionary judgment by the Commissioner and the result incorporated into regulations. 33 V.S.A. § 2554.

Without intending to detract from or in any way distort the claims of the plaintiffs, it seems clear that all of the challenges to the proposed regulation center on the claimed failure of the proposal to represent a sufficiently "equitable" reduction to comply with the statutory purposes, or even to pass a broader "due process" or "equal protection" constitutional test. The trial court overturned the regulation entirely on the basis that the result will be that, most probably, at the end of the eligibility period more than twenty per cent of the people receiving this temporary housing assistance will be forced out of their present quarters and unable to find any alternative. The court found this result to be plainly inconsistent with what it described to be the statutory policy of providing the necessities of life, including shelter, to needy persons, and therefore determined that the proposed regulation had to be held invalid as going beyond the reasonable bounds of the Department's authority. It also concluded that it could not approve of the method adopted in response to the situation facing the Department. The record does not suggest that there was put before that court any alternative plans or modifications of the questioned rule, or that the Department was ever asked to come forward with any proposals of amendment or redrafting.

It is probably unnecessary to point out that "approval" by any court, unless it relates to legal propriety, is not the issue. More times than need be recounted courts, trial and appellate, are in the position of being required to enforce or validate laws of which they may personally disapprove. The essential is that they be within the enacting authority of the Legislature, and unrestricted by any constitutional prohibition, federal or state.

Both the conclusions below and parts of the plaintiffs' argument merge the concepts of the furnishing of housing and the furnishing of housing assistance. The statutes make it abundantly clear that all General Assistance, whether

permanent or temporary, is to be financial. Unfortunately, taken with the admitted situation of underfunding, that restriction virtually guarantees that such aid, at some point, and in some circumstances, must fall short of full relief. Since the statutory plan is so clearly drafted in contemplation of such a circumstance, the fact of insufficiency alone cannot be the grounds for overturning the regulation, whatever may be our view of the policy.

The plaintiffs contend, however, that the proposed action of the Commissioner, as embodied in the proposed regulation, amounts to an improper exercise of the discretion to reduce equitably the amounts granted for assistance based on the unavailability of funds. It is the argument of the plaintiffs that the reduction is improper because it results in money payments inadequate to pay the necessary rent, which may result in loss of shelter. As we have already noted, the assumption that the welfare assistance must represent a guarantee of shelter is implicit in that contention but unwarranted by the statute.

The application of reasonable maximums in view of the limited nature of appropriated funds has been previously validated by the Court. *Caldwell* v. *Department of Social Welfare,* 134 Vt. 96, 98, 353 A.2d 336, 338 (1976); *In re Devoid,* 130 Vt. 141, 287 A.2d 573 (1972). This regulation falls within that class. All applicants who qualify under it are subject to the same standards of application, varied only by adjustments for area rent levels. Although financially insufficient to meet total shelter needs, this shortcoming is only remediable by the Legislature. The regulation otherwise sufficiently satisfies the test of a proper exercise of the administrative authority of the Department of Social Welfare. *Hatin* v. *Philbrook, supra.*

The plaintiffs also contend that the regulation violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. The equal protection claim is stated to rest on the creation of two classes of needy persons:

(1) Those whose income is insufficient to meet their shelter needs; and

(2) Those whose income is insufficient to meet their needs for other necessities of life.

Having erected, by their definitions, these two asserted classes, the plaintiffs then argue that those who are in need of necessities other than housing are given general assistance according to their needs, while those who are in need of shelter are barred from receiving general assistance in accordance with their need. The plaintiffs go on to contend that the regulation will, after twenty-eight days, bar the needy from receiving any assistance to meet that need, while recipients of assistance in other categories will get flexible grants of general assistance based upon need.

The plaintiffs do not help their case by arguments that mislead, or are not factually valid. Their situation is unfortunate enough; it needs no overstatement. The general assistance given for needs other than housing is not one hundred per cent of need but, admittedly, at a level that may be below fifty per cent. Housing assistance for an eligible recipient does not cease at the end of the twenty-eight-day period, assuming continued eligibility; rather, it goes to the level of permanent housing assistance for that area.

The true dilemma arises from the fact that housing cannot be purchased in partial quantities. If the financial aid is below the level of available rents in the area, it may not enable the recipient to find or keep living quarters.

However true that may be, it is of no assistance in the resolution of the validity of the regulation to shift back and forth from a premise that asserts it is the responsibility of the State of Vermont to see that its eligible poor have shelter in fact, to a recognition that the statute directs only that financial aid toward shelter be given.

The policy of the law is clear, and, as we have seen, restated more than once in the statute that it is financial aid that the state is ultimately providing. It is, of course, true that, for all applicants on first eligibility for emergency housing assistance, shelter costs will be fully paid for, if necessary, for up to twenty-eight days and then drop to the permanent housing assistance level, a financial aid level common to all. This introduces no improper separation into classes, contrary to the plaintiffs' contention, and certainly represents no invidious or suspect classification. Nor does it infringe upon a fundamental right. Its reasonable basis, in light of its permissible purpose, puts it clearly within the approved ambit of

*Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970). The only real difference between needy recipients of temporary housing assistance and others receiving housing assistance is that for twenty-eight days they get more.

Nor does the due process contention fare any better. Here the plaintiffs seek to find some sort of presumption underlying the proposed regulation. They argue that the regulation presumes that recipients will be able to find permanent housing within twenty-eight days, and then label it defective as an "irrebuttable" presumption in violation of the Due Process Clause, citing *United States Department of Agriculture* v. *Murry*, 413 U.S. 508, 514 (1973). Not only has the application of that test been undercut by the more recent holding in *Weinberger* v. *Salfi*, 422 U.S. 749 (1975), but the substantive existence of the very issue must be questioned. The argument rests on an assumption that the plaintiffs would be entitled to housing after twenty-eight days if they could demonstrate need. That assumption calls for the further step that the statute offers housing itself as relief, rather than financial aid toward housing. Since it is monetary relief that is intended and given, as the statutory language clearly states, there is no presumption that relief will always result in permanent housing. Indeed, a funding situation within the authority of the Legislature can be envisioned that was so parsimonious as to never be sufficient to pay all of any rational rent level anywhere in the state. There is no issue here under the Due Process Clause.

*The judgment invalidating W.A.M. § 2613.2 is reversed and the injunction against its operation is dissolved forthwith.*