## International Assoc. of Fire-Fighters and Town of Hartford Fire Department v. Town of Hartford

[503 A.2d 1143]

No. 83-627

Present: Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.

Opinion Filed November 27, 1985

*Biederman & Rakow, P.C.*, Rutland, for Petitioner-Appellee.

*Welch, Graham & Manby*, White River Junction, for Respondent-Appellant.

**Hayes, J.** This is an appeal by the Town of Hartford (Town) from an order of the Vermont Labor Relations Board (Board). The question presented for our review is whether the Deputy Fire Chief of the Town is a supervisor within the meaning of 21 V.S.A. § 1502(13).

The Vermont Municipal Labor Relations Act, 21 V.S.A. §§ 1721-1735, specifically excludes from collective bargaining units employees considered to be supervisors under 21 V.S.A. § 1502(13). 21 V.S.A. § 1722(12)(B).

The Town contends that the Deputy Fire Chief, Richard Taylor, is a supervisor. The term "Supervisor" is defined in section 1502(13) as:

an individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a

merely routine or clerical nature but requires the use of independent judgment.

The Board concluded that the Deputy Chief did not possess the authority set forth in the statute and held that he was properly included in the bargaining unit proposed by the Hartford Career Firefighters Association, Local 2905, IAFF. We agree and affirm.

The findings indicate that the Deputy Chief does not have the authority to hire, transfer, lay off, recall, promote, or discharge employees or to effectively recommend such action. The Town maintains, however, that the Deputy Chief is personally responsible for directing all activities of the Town ambulance service and exercises substantial supervisory authority in the firefighting function of the Hartford Fire Department.

In performing his duties as a shift commander and ambulance director, the Deputy Chief can suspend an employee for the remainder of the shift. This authority to discipline, however, is the same as that exercised by the lieutenants who are included in the bargaining unit. In the seven years Richard Taylor has been Deputy Chief, he has never suspended or dismissed any ambulance service personnel or any employee of the Fire Department and no employee has been suspended or dismissed as a consequence of his recommendation.

The Board properly held that the Deputy Chief's authority to discipline is extremely limited and that such authority standing by itself does not make an employee a supervisor. In *Firefighters v. Brattleboro Fire Department*, 138 Vt. 347, 351, 415 A.2d 243, 245 (1980), four fire captains had authority, by agreement with the Fire Chief, to "suspend a guy for one day." We viewed this authority as being extremely limited and noted that, as in the case at bar, there was no evidence that it was exercised.

"The statutory test is whether or not an individual can *effectively exercise* the authority granted him; theoretical or paper power will not make one a supervisor. . . . Nor do rare or infrequent supervisory acts change the status of an employee to a 'supervisor.'" *Id.* at 351, 415 A.2d at 245-46 (citations omitted).

In this case, decisions as to which Fire Department employees will receive merit pay raises are made exclusively by the Fire Chief. The Deputy Chief does not have the effective authority to recommend these pay raises. The Deputy Chief may recommend

pay increases for ambulance workers, but the Board found no indication that those recommendations are actually followed by Town authorities.

■ The authority which makes one a supervisor is authority which, when exercised, is not "of a merely routine or clerical nature but requires the use of independent judgment." 21 V.S.A. § 1502(13). The Board found no indication that the Deputy Chief's authority to assign and direct firefighters was other than that of a merely routine nature. Moreover, the Board was not persuaded that the Deputy Chief's duties as ambulance director, in assigning and directing employees, require independent judgment. Thus, the Board concluded that his position fell short of being supervisory in nature. We agree with this conclusion.

The next matter we consider is the Deputy Chief's authority to adjust grievances. As to this, the Board found that Fire Department employees have submitted grievances directly to the Chief in the past two years and have not first grieved to the Deputy Chief. Based on all the evidence, the Board held that the Deputy Chief does not have effective authority in this regard.

■ The Town asserts that, in the absence of the Fire Chief, the Deputy assumes the authority and responsibility of that position. This contention is of little avail. "An employee does not acquire a supervisor's status by reason of temporarily taking over the supervisor's duties in his absence." *Firefighters, supra,* 138 Vt. at 351, 415 A.2d at 246.

■ The findings of the Board are supported by the evidence below, and the conclusions of law are supported by the findings. It is not enough for the Town to demonstrate that the evidence below might lend itself to a different reading by a different tribunal. We will not substitute our assessment of the evidence for that of a regulatory body. *Id.* at 350, 415 A.2d at 245. "[F]indings will stand if there is any credible evidence that supports them." *In re T.L.S.,* 144 Vt. 536, 540, 481 A.2d 1037, 1039 (1984). This is particularly so where the subject matter lends itself to Board expertise, as does the area of labor relations in this case. *In re Green Mountain Power Corp.,* 138 Vt. 213, 215, 414 A.2d 1159, 1160 (1980).

One other matter remains for disposition. The Town of Hartford contends that the Labor Board's decision was arbitrary. In support of this contention, it alleges that certain comments of the Chairman of the Board show a disregard for the legal issue before

the Board, namely, whether a person with the Deputy Chief's responsibilities is a supervisor or an employee. The challenged comments were made well into the hearing. The Chairman remarked "we are concerned with the practicalities of running management relations in the State."

This statement of the Board Chairman should not be viewed in isolation. The record demonstrates that the Chairman was very much aware of the issues before the Board and, at one point, stated: "we're here to decide whether the person is confidential or managerial, not whether the Town followed poor management practices."* While it is true that the Chairman indicated that he "would rather see how things work[ed] out" than make a decision, the Board, nevertheless, did render a decision supported by findings of fact and conclusions of law.

In labeling the Board's decision as arbitrary, the Town also points out that the Chairman of the Board stated, "we have had a number of these cases and I think I can feel how this is going to come out." This statement was made when nearly two-thirds of the evidence was in, and is in the nature of a hunch. Whatever place hunches may have in horse racing, they do not belong in the quasi-judicial arena. What a Board member speaks of as *possible,* a litigant will think of as *inevitable.* Thus, innocent conjecture is mistakenly converted into suspicious circumstance. In this case, we consider the Chairman's statement a premature prognostication, not a demonstration of prejudice that would warrant setting aside the Board's decision. See *Vermont Board of Health* v. *Town of Waterbury,* 129 Vt. 168, 174, 274 A.2d 495, 499 (1970) (showing of demonstration of bias required to disqualify board member or defeat result).

*Affirmed.*

---

* The Town of Hartford objected below to the inclusion of the Deputy Fire Chief in the bargaining unit on two grounds: 1) that the Deputy Chief is a supervisory employee and 2) that the Deputy Chief is a confidential employee.