# Petition of AFSCME, Local 490 and Town of Bennington

[571 A.2d 63]

No. 88-251

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed December 15, 1989

*Biederman & Rakow, P.C.,* Rutland, for Plaintiff-Appellee.

*Joseph E. McNeil* and *William F. Ellis* of *McNeil & Murray,* Burlington, for Defendant-Appellant.

**Allen, C.J.** The Town of Bennington appeals from a Vermont Labor Relations Board (VLRB) decision that includes police department sergeants in the bargaining unit of a union petitioning ·to represent police department employees. We affirm.

The American Federation of State, County, and Municipal Employees (union) petitioned the VLRB under the Vermont Municipal Labor Relations Act (VMLRA), 21 V.S.A. §§ 1721–1735, requesting expansion of the existing bargaining unit for the Bennington Police Department to include captains, lieutenants, dispatchers, parking meter clerks, meter officers, clerk dispatchers, and secretaries. The sole issue remaining after the parties' stipulation before the Board and withdrawal of a cross-appeal here is the question of whether sergeants in the Department should be included in the bargaining unit or excluded as supervisory employees.

21 V.S.A. § 1722(12)(B) incorporates the statutory definition of "supervisor" provided in 21 V.S.A. § 1502(13). A supervisor is defined as:

> an individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature but requires the use of independent judgment.

The Board compared the duties of patrol officers and sergeants. It found that sergeants receive higher compensation than patrol officers and that during work shifts involving both, sergeants are.senior. But, on at least six shifts per week, there is no sergeant on duty. When acting as the officer in charge, a sergeant has little contact with patrol officers. A sergeant customarily spends approximately five and one-half hours per day on patrol and during that time performs the same duties as pa-

trol officers. The Board also found that sergeants lack the authority to "assign and responsibly direct the patrol officers working below them in the chain of command." During a shift, circumstances sometimes require sergeants to decide when patrol officers may leave their zones, whether to call for backup assistance, whether a high-speed chase should continue, or when to make arrests. The Board stressed that in making such decisions, sergeants simply apply established Department practices. On six out of twenty-one shifts per week, there is no sergeant on duty and those in charge make the same determinations. The Board further found that sergeants did not have "authority to hire, transfer, lay off, recall, promote, discharge, or reward employees, or to adjust their grievances, or to effectively recommend such action."

The Board concluded that "the assigning and directing responsibilities of the sergeants do not rise to the level necessary to make them supervisors." The Board stated:

> In sum, sergeants are more highly skilled individuals who generally perform the same duties as patrol officers but who, because of their experience and skill, ensure that officers on their shift adhere to established policies, procedures and practices. Such direction lacks use of independent judgment and does not rise to the level of constituting exercise of supervisory authority.

The Board certified the union as the exclusive bargaining representative for nonsupervisory police department employees, including sergeants. The present appeal followed.

The Town argues first that the Board's determination was clearly erroneous, because the sergeant's power, and not its exercise, determines supervisory status. See *Morello v. Federal Barge Lines, Inc.*, 746 F.2d 1347, 1350 (8th Cir. 1984).

■ ■ The existence of actual power, rather than the frequency of its use, determines supervisory status. However infrequently used, the power exercised must be genuine. "The statutory test is whether or not an individual can *effectively exercise* the authority granted him; theoretical or paper power will not make one a supervisor." *Firefighters of Brattleboro, Local #2628 v. Brattleboro Fire Dept.*, 138 Vt. 347, 351, 415 A.2d

243, 245 (1980) (emphasis in original). Thus, we must determine the sergeants' actual powers, rather than their theoretical authority. Effective exercise of any one of the powers enumerated in the statute confers supervisory status on an employee. *Id.* at 351, 415 A.2d at 245; see *NLRB v. Dick Seidler Enterprises*, 666 F.2d 383, 385 (9th Cir. 1982).

When defining the bargaining unit, the Board need not approve the most appropriate unit, only an appropriate unit. *In re VSEA, Inc.*, 143 Vt. 636, 642–43, 471 A.2d 230, 234 (1983). This Court, in reviewing the Board's conclusion, "may 'only ask whether the findings of fact taken as a whole justify the Board's ultimate conclusion.'" *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 152 Vt. 343, 348, 566 A.2d 955, 958 (1989) (quoting *In re Liquor Control Dept. Nonsupervisory Employees*, 135 Vt. 623, 625, 383 A.2d 612, 613 (1978)). If the record contains factual support for the Board's conclusion, we will leave it undisturbed. Applying the definition of "supervisor" to particular facts requires considerable discretion, and the Board's decision, like the findings of the National Labor Relations Board under federal law, will not be overturned unless it is shown to be clearly erroneous. *Firefighters of Brattleboro*, 138 Vt. at 350, 415 A.2d at 245 (citing *NLRB v. Hoerner-Waldorf Corp.*, 525 F.2d 805, 808 (8th Cir. 1975)). Therefore, we accord great deference to the Board's finding that sergeants in the Bennington Police Department do not possess any of the powers enumerated in the definition of supervisor. *International Ass'n of Firefighters Local #2287 v. City of Montpelier*, 133 Vt. 175, 178, 332 A.2d 795, 797 (1975).

The Town argues that sergeants have "the authority to assign and responsibly direct the patrol officers working below them in the chain of command, and that such authority requires the use of independent judgment." The record contains evidence that part of the sergeants' responsibilities includes assigning and directing patrol officers. However, the Board found that the assignment of patrol officers to zones constituted an insignificant part of duties, citing *Firefighters of Brattleboro*, 138 Vt. at 351, 415 A.2d at 245, which held that the "extremely limited" author-

ity to discipline, suspend, or lay off a firefighter did not confer supervisory status.

The Town argues in this appeal, however, that once the Board determined that its sergeants could exercise some assignment responsibilities, it was clearly erroneous to minimize the importance of those duties and to conclude that sergeants were not supervisors. The Town relies on *City of Peru v. Illinois State Labor Relations Board*, 167 Ill. App. 3d 284, 521 N.E.2d 108 (1988), for the proposition that the Board could not wholly disregard the supervisory authority of the sergeants merely because directives and regulations closely circumscribe the exercise of that authority. The court in *City of Peru* held that sergeants and lieutenants were supervisory personnel despite the existence of regulations and explained:

> the role of the lieutenants and sergeants in safely and efficiently orchestrating their shifts in accordance with the rules and regulations, in choosing which rules or regulations should be followed under a variety of circumstances, and their role in electing to forego the rules and regulations in certain situations. Further, there cannot possibly be written procedures for every possible contingency which the full- and part-time shift commanders might face. The record establishes the lieutenants and sergeants exercise of independent judgment, and though the judgment is informed by strict training and written procedures, it is judgment nonetheless; "it is not simply the conditioned reflex of an automaton."

*Id.* at 293, 521 N.E.2d at 115 (quoting *Maine Yankee Atomic Power Co. v. NLRB*, 624 F.2d 347, 363 (1st Cir. 1980)).

■ We agree with the Town that detailed regulations do not alone determine whether an employee operating under those regulations can exercise independent judgment within the meaning of § 1502(13). A public servant can, and generally does, exercise independent judgment within stated norms or limits. The existence of detailed regulations cannot itself determine whether a sergeant's duties involve supervisory responsibility. See *South Burlington Police Officers' Ass'n & City of South Burlington*, 11 V.L.R.B. 332 (1988).

However, the balance of the Board's findings in the present case support its conclusion. If the Board lacked the discretion to regard some technically supervisory activities as unimportant in comparison with overall duties, an employer could circumvent the very spirit and intent of the statute by creating de minimis supervisory duties for the sole purpose of excluding classes of employees from union representation. The matter before us does not suggest that intention by the Town, and the Town points to no evidence that undermines the Board's conclusion that the assigning and directing responsibilities of the sergeants were insignificant in comparison to their overall responsibilities. See *NLRB v. Sayers Printing Co.*, 453 F.2d 810, 815 (8th Cir. 1971). The sergeants in *City of Peru* never ran a radar gun, never responded to a call except as backup, virtually never filed a report, issued tickets, or made arrests, but could order employees to work overtime, to work an additional shift, or decide when compensatory time could be taken. In sharp contrast, the Bennington Police Department's sergeants lack specific supervisory authority and "generally perform the same duties as patrol officers."

■ The Town also cites *City of Freeport v. Illinois State Labor Relations Board*, 169 Ill. App. 3d 151, 523 N.E.2d 214 (1988), which reversed a state board's decision that included sergeants in the bargaining unit because they performed the same duties as patrol officers. The court rejected the board's quantitative analysis of the supervisors' duties and ascribed greater significance to the existence of actual supervisory powers, whether or not those powers were used most of the average work day. The sergeants could assign officers to beats, squad cars, and partners, order off-duty officers to work when needed, issue oral and written reprimands to subordinates, take command of investigations, approve overtime compensation for court appearances, determine their own beat systems, evaluate subordinates through a formal written procedure, and take responsibility for discipline under the terms of the police manual

regulations. *Id.* at 157, 523 N.E.2d at 217.\* The sergeants in the present case have none of these duties. The Board did not err by giving great weight to the finding that sergeants perform the same duties as patrol officers a significant portion of the time.

The Town has not sustained its burden of demonstrating that the Board's decision was clearly erroneous.

*Affirmed.*

---

\* We note that the Illinois Public Labor Relations Act's definition of "supervisor" differs from Vermont's by distinguishing "police employment" from all other kinds of employment, specifically allowing police employees to be supervisors even though they do not devote "a preponderance of their employment time" to exercising supervisory authority. Ill. Rev. Stat. ch. 48, par. 1603(r) (1985), *quoted in City of Freeport,* 169 Ill. App. 3d at 155, 523 N.E.2d at 216.