## In re Arlene Cerutti

[733 A.2d 752]

No. 98-118

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 28, 1999

*William H. Sorrell*, Attorney General, and *David K. Herlihy*, Assistant Attorney General, Montpelier, for Appellant.

*Samuel C. Palmisano*, VSEA General Counsel, Montpelier, for Appellee.

**Morse, J.** The State appeals a decision of the Vermont Labor Relations Board sustaining the grievance of Arlene Cerutti and promoting her to the position of Account Clerk B in the Department of Agriculture. The Board found that the Department had violated § 11.01 of the State Rules and Regulations for Personnel Administration by failing to review her written performance evaluations in its decision to fill the position, and that, because of the violation, grievant was entitled to the job, together with back pay and interest. We reverse.

Grievant graduated from Johnson State College in 1989 with a degree in business management and began work with the Department of Agriculture as a secretary in 1990. Grievant's duties as a secretary included entering information in a computer database and answering the telephone. In 1997, the Account Clerk B position opened, involving "elementary accounting work at a sub-professional level of responsibility in maintaining bookkeeping and accounting records through the application of accounting theory and practice." The Department initiated an open competitive application process to fill the vacancy, and in March of 1997, grievant, who was the only in-house candidate, applied for the job.

On April 2, the personnel department informed grievant that she was eligible to compete for the position, provided that she pass an accounting skills examination. Grievant completed the exam on April 9, and performed well with a score of ninety-six. She immediately informed the business/personnel manager, and he scheduled an interview for her later that day. The other four candidates selected for interviews, three of whom were state employees in other departments and one of whom was a temporary state employee, were afforded at least one day notice to prepare for the interview. The business/personnel manager testified before the Board that he scheduled her interview that day because he was "worried that she thought that we were trying to bypass her because we were starting to do the interviews before she had taken the exam." He also testified that grievant never indicated that she was unprepared or that she would have preferred more time before the interview.

The three-member hiring panel that conducted the interviews consisted of the deputy commissioner for Administration and En-

forcement, the business/personnel manager, and the former Account Clerk B, who had been promoted to another government post. Interviews were completed on April 9 and 10, and each panelist ranked the candidates in order of preference based on their evaluations. Grievant was ranked last out of five by each member of the hiring panel. Grievant concedes, and the Board acknowledged, that her interview could have been better.

Following the interviews, the Department hired the candidate ranked first by each of the panelists as the new Account Clerk B. The successful candidate had recently received a degree in business administration from the University of Vermont with a concentration in accounting. He was employed as a temporary Accountant A with the Department of Public Safety when the panel selected him for the Account Clerk B position. In addition, he scored a ninety-nine on the accounting skills examination, the highest of any candidate competing for the job. The panel ranked the other three candidates interviewed at various levels between grievant and the selected candidate.

On July 7, grievant petitioned the Board to review the Department's failure to promote her to the Account Clerk B position. Grievant maintained that the Department had failed to consider her written performance evaluations in its hiring decision and that her "excellent" written evaluations would have gotten her the job over the other four candidates, her poor interview notwithstanding. Grievant also claimed that the State discriminated against her on the basis of gender.

The Board found no evidence of gender discrimination, but found that the Department had violated Personnel Rules and Regulations § 11.01 by failing to consider grievant's written performance evaluation in its hiring decision. The Department panel, however, had not reviewed any candidate's performance evaluations. The Board ruled that, if grievant's written evaluations had been considered, she would have been promoted to Account Clerk B over the other candidates. The Board ordered the Department to promote grievant to the Account Clerk B position, and awarded her back pay and interest. The State appealed.

The State maintains that the Board erred by concluding grievant would have been promoted to Account Clerk B if the Department had considered her written performance evaluations. The State also claims that the Board's interpretation of § 11.01 is unreasonable because it creates an enforceable right in an employee to overturn a hiring decision if the employer did not review written evaluations.

Section 11.01 of the State of Vermont Rules and Regulations for Personnel Administration provides that, "[a]s far as is practicable and feasible, a vacancy shall be filled by promotion of a qualified employee based upon individual performance, as evidenced by recorded performance evaluation reports, and capacity for the new position." Grievant's written performance evaluation for 1994-95 indicated an overall rating of "excellent." Grievant's supervisor was instructed by her superiors not to give "excellent" ratings for the following year so she opted for no written evaluation whatsoever that year. As a result, grievant received a presumptive "excellent" for that year.

The State concedes that the Department did not consider grievant's written performance evaluations regarding her work as a secretary in the years preceding her application for promotion. The State notes, however, that two of the three members of the hiring panel were well aware of grievant's performance evaluations before the interview. The deputy commissioner signed grievant's secretarial performance evaluation for 1994-95. The business/personnel manager testified that he was aware that she had "an excellent performance evaluation in the file." The State claims that the failure to review grievant's performance evaluations was harmless because the Department hired the best applicant for the Account Clerk B position.

The Board found that "[g]rievant should have benefitted from [Section 11.01], but did not due to the employer's failure to take her performance evaluations into account," and concluded "that grievant would have been promoted into the Account Clerk B position if the employer had not violated § 11.01." In rendering its decision, the Board noted that any shortcoming in grievant's interview should not have outweighed the intent of § 11.01, and that grievant, a qualified in-house employee, should have been promoted over the candidate from outside the Department.

We recognize that the Board is entitled to substantial deference in rendering its decisions, and we will reverse its conclusions only when clearly erroneous. See *In re Butler*, 166 Vt. 423, 425, 697 A.2d 659, 661 (1997). We are aware that, "[i]n reviewing the Board's conclusion, this Court may only ask whether the findings of fact taken as a whole justify the Board's ultimate conclusion." *In re VSEA*, 164 Vt. 214, 216, 666 A.2d 1182, 1183 (1995) (citations omitted); see also *In re AFSCME, Local 490*, 153 Vt. 318, 321, 571 A.2d 63, 65 (1989) ("If the record contains factual support for the Board's conclusion, we will leave it undisturbed."). We find clear error here.

We do not need to address the Board's interpretation of § 11.01 as a mandate for employers to consider performance evaluations in

every hiring decision. We determine that the Board's conclusion that grievant, ranked fifth out of five candidates interviewed, would have surpassed the other applicants if the Department had considered her written evaluations can be supported only by speculation.

Based on the evidence in the record, even had the Department factored grievant's written evaluations into its hiring decision, any inference that grievant would have been chosen over the other four candidates is unreasonable. There is also much to be said for the position of the dissenting member of the Board in this case, recognizing that "making the last placed candidate the first and skipping over three other state employees, is an inappropriate use of Board authority, and creates more inequalities than it resolves." See *In re Gorruso*, 150 Vt. 139, 145, 549 A.2d 631, 635 (1988) (Board may not arbitrarily substitute its judgment for that of State).

Having learned at oral argument that grievant obtained another position at an even higher salary than the Account Clerk B position, we need not remand to the Board to review other possible remedies for failure to consider grievant's performance evaluations in the hiring process.

*Reversed.*